```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

FELIX APONTE,

                Petitioner,              MEMORANDUM & ORDER

                                         19-CV-596(KAM)

     -against-

JAIME La MANNA, Superintendent, Green
Haven Correctional Facility,

                Respondent.

---------------------------------------X
```

**MATSUMOTO, United States District Judge**:

On January 28, 2019, petitioner Felix Aponte ("petitioner") brought the above-captioned *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254") challenging his conviction of criminal possession of a weapon in the fourth degree and robbery in the first degree. (*See* Petition for Writ of Habeas Corpus ("Pet."), filed Jan. 28, 2019, ECF. No. 1.)  For the reasons discussed below, the petition is denied.

## BACKGROUND

**I.   The Robbery at 65 Fifth Avenue**

On November 3, 2010, forty-nine-year-old Mohammed Esa was in D.B. Smoke Shop, the candy, coffee and cigarette store he owned at 65 Fifth Avenue, in Brooklyn.  (Transcript of State

1

Trial ("Tr."), at 102-05,[1] ECF No. 11-3.) At around 2:50 p.m. that day, Mr. Esa was alone in the store when a man entered. (*Id.* at 107.) The man was wearing a hat, but nothing was covering his face. (*Id.* at 110.) He walked toward the back of the store while looking around. (*Id.* at 107-08.) Mr. Esa told the man to come over to the register. (*Id.*) The man proceeded to enter behind the counter where Mr. Esa was standing near the register, and after asking Mr. Esa about cigarettes, the man announced multiple times that he was going to take money. (*Id.* at 108-11.) Mr. Esa started kicking the man to keep him away from the open register when he saw that the man had a knife. (*Id.* at 108, 110-12.) The man began swinging the knife at Mr. Esa and moving toward him. (*Id.* at 111.) The man was also trying to grab the money out of the open cash register. (*Id.* at 113.) Mr. Esa grabbed a steel bracket from one of the shelves which he used to keep the robber from stabbing him. (*Id.* at 113-14.) The robber started moving away from Mr. Esa, as Mr. Esa continued to try to deter the robber, picking up items and throwing them at him. (*Id.* at 115.) Finally, Mr. Esa picked up a "real weapon... a walking cane" and ran after the robber with it. (*Id.*) The robber grabbed some money from the register and

---

[1] Due to a filing irregularity that makes the original pagination unreadable in parts of the transcript, the court's citation to page numbers is to the pagination generated by CM/ECF in the page headers, unless otherwise noted.

2

ran from the store.  (*Id.* at 115-16.)  Mr. Esa chased after the robber and ran out of the store, where he saw the driver's side door closing on a dark green pickup truck that was parked in the crosswalk next to the store on the same side of the street where Mr. Esa was standing.  (*Id.* at 116.)  The truck drove off in the direction of Flatbush Avenue.  (*Id.* at 117.)

A store customer, Ala Fakhereddine, was with her husband in a car stopped in front of the store and behind the green truck, and was able to see and memorize the license plate number of the green truck.  (Tr. at 217-18.)  Ms. Fakhereddine told her husband the license plate number and he called the police, who arrived shortly thereafter.  (*Id.* at 217.)

**II.  Mr. Esa's Identification of Mr. Aponte**

The following day on November 4, 2010, Mr. Esa went to the police station to identify the robber by viewing and selecting photographs. (Tr. at 171.)  He chose a photo after stating that if he had to choose one picture "out of all the pictures" he viewed, his choice would be the closest.  (*Id.* at 184.)  The photograph he chose was not a photograph of the petitioner but of an individual incarcerated on the day of the robbery.  (*Id.* at 431.)  On March 10, 2011, Mr. Esa identified the petitioner, Mr. Aponte, from a double-blind lineup, despite not being "a hundred percent" sure.  (*Id.* at 141-42, 183, 379.)

3

### III. The DNA Sampling and Test

The police found the robber's getaway pickup truck on November 5, 2010, and swabbed the steering wheel, the gear shift handle, and the rear-view mirror to take a DNA sample, as those are the areas that "are the most frequently touched [by the driver] inside of a vehicle." (Tr. at 191-95.) The swabs were sent to the Office of the Chief Medical Examiner of the City of New York ("OCME") for analysis. (*Id.* at 195-96.) At some point in November 2010, analysts at the OCME tested the DNA swabs taken from the getaway vehicle. (*Id.* at 261.) On May 26, 2011, police obtained an oral DNA swab from petitioner. (*Id.* at 404-05.)

### IV. Trial and Appeal

At trial, the prosecution presented evidence including a surveillance videotape from Mr. Esa's store showing the robbery; still photographs taken from the video footage showing petitioner's face in varying degrees of enlargement and also showing the knife in petitioner's hand; Mr. Esa's testimony regarding the robbery; and testimony from an OCME criminalist regarding the DNA match between the samples collected and petitioner's buccal (cheek) swab. (Tr. at 102-123, 270-357, 483-84.)

Because the OCME is "so big and so busy," no single analyst takes a case from inception to final report, with

4

batches of analysis randomly assigned. (Tr. at 287.) Though the OCME criminalist who testified for the prosecution, Joanna Schlesser-Perry, did not personally perform the DNA testing, she did interpret the results and report her findings that showed that the DNA sample collected from the robber's getaway truck matched only one male DNA profile, Felix Aponte. (*Id.* at 297.) Ms. Schlesser-Perry testified that that DNA profile could only be found in one person out of 6.8 trillion people. (*Id.* at 294.) In the opinion of Ms. Schlesser-Perry, petitioner was the source of the DNA on the vehicle swabs. (*Id.* at 297.)

A jury found petitioner guilty of robbery in the first degree and criminal possession of a weapon in the fourth degree. (Tr. at 551-53.) Petitioner was subsequently sentenced, as a persistent violent felony offender, to a term of imprisonment of twenty-four years to life. (Transcript of Petitioner's State Sentencing Proceeding ("Sentencing Tr."), at 15-16, ECF No. 11-4.) On April 26, 2017, the Appellate Division unanimously affirmed petitioner's conviction. *People v. Aponte*, 149 A.D.3d 1096 (2d Dep't 2017). On February 13, 2018, the New York Court of Appeals denied review. *People v. Aponte*, 30 N.Y.3d 1113 (2018).

## V. Procedural History

On January 28, 2019, Mr. Aponte brought this petition for a writ of habeas corpus, with the same two claims petitioner

previously raised before the Appellate Division: (i) that the People failed to prove his guilt beyond a reasonable doubt; and (ii) that the trial testimony given by Ms. Schlesser-Perry, the OCME DNA expert, improperly infringed upon petitioner's Sixth Amendment constitutional right to confront a witness testifying against him in a criminal action because she did not personally perform the DNA tests about which she offered testimony. (Pet. at 7-11.)

On June 28, 2019, the respondent filed an opposition to Mr. Aponte's petition for a writ of habeas corpus. (Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, ECF No. 11.)  The court ordered petitioner to file any reply by July 29, 2019.  *See* Scheduling Order filed onto ECF, June 13, 2019.  Having received no reply from the petitioner, on May 19, 2020, the court ordered the respondent to confirm service on petitioner of ECF No. 11, and the respondent again served the petitioner on May 22, 2020.  (Response to Order to Show Cause, ECF No. 13.)  As petitioner has not filed a reply, nor has he requested an extension of time to file a reply or otherwise indicate that he intended to submit further briefing, the court deems Mr. Aponte's petition fully briefed and proceeds to address its merits.

**LEGAL STANDARD**

A writ of habeas corpus filed by an individual in state custody is governed by, *inter alia*, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Section 2254 of AEDPA provides that a district court shall issue a writ of habeas corpus for an individual in state custody "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2244 provides that a one-year statute of limitations applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1); *see generally* 28 U.S.C. § 2244(d).

I.  **State Court Application of Federal Law**

A district court may grant a writ of habeas corpus for claims that were adjudicated on the merits in state court and where the adjudication produced a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "A state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (brackets in original) (citing 28 U.S.C. § 2254(d)(1)); *see also Reznikov v. David*, Nos. 05-CV-

1006 (RRM), 05-CV-1008 (RRM), 2009 WL 424742, at *3 (E.D.N.Y. Feb. 20, 2009) ("Under AEDPA, a proper merits adjudication requires only that (a) a federal claim be raised, and (b) that it be disposed of on substantive, rather than procedural grounds."). "When a state court [adjudicates a federal claim on the merits], a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan*, 261 F.3d at 312.

Clearly established federal law is limited to the jurisprudence of the Supreme Court at the time of the relevant state court decision. *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005). The "contrary to" and "unreasonable application" clauses are analyzed independently. *Stultz v. Artus*, No. 04-CV-3170 (RRM), 2013 WL 937830, at *5 (E.D.N.Y. Mar. 8, 2013). A state court's decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring and writing for the majority in this part). An "unreasonable application" of law occurs when "the state court identifies the correct

8

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Unreasonableness is measured objectively and requires "a 'higher threshold' than 'incorrect.'" *Stultz*, 2013 WL 937830, at *5 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The state court's application must have "[s]ome increment of incorrectness beyond error . . . . [H]owever, . . . the increment need not be great." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). If a district court determines a state court's application of law was unreasonable, "it must next consider whether such error was harmless." *Stultz*, 2013 WL 937830, at *5 (citations and internal quotations omitted).

Apart from a state court's unreasonable or contrary application of federal law, a district court may grant a writ of habeas corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court determinations of facts are presumed correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A district court "may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded

9

jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (citations and internal quotation marks omitted).  A federal court "cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to common sense."  *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (quoting *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003)).

II. **Exhaustion Requirement**

Pursuant to § 2254, a district court shall not grant a writ of habeas corpus made by "a person in custody pursuant to the judgment of a State court" unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  This rule is "grounded in . . . concerns for federalism and comity between the state and federal sovereign . . . [and] ensures that federal courts respect the States' interest in correcting their own mistakes." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citation omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  To satisfy this requirement, a prisoner must have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts," *Turner v.*

10

*Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (citation and internal quotation marks omitted), either in the form of "explicit constitutional argument" or by "alleging facts that fall 'well within the mainstream of constitutional litigation.'" *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995).  Fair presentation includes a request for discretionary review in the state's highest appellate court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999); *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

**III.  Pro Se Status**

In the instant action, petitioner is proceeding *pro se.* (Pet. 19.)  A *pro se* petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted) and are construed "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).  "Nonetheless, a *pro se* [litigant] is not exempt from compliance with relevant rules of procedural and substantive law." *Rivera v. United States*, No. 06-CV-5140 (SJF), 2006 WL 3337511, at *1 (E.D.N.Y. Oct. 4, 2006) (citing *Faretta v. California*, 422 U.S. 806, 834 n.36 (1975)). Petitioner's claims are evaluated accordingly.

**DISCUSSION**

Petitioner raises the same two claims before this court as were before the Appellate Division, where they were fully adjudicated. (Pet. 7-11.) Petitioner's claims are thus deemed exhausted, and his habeas claim deemed properly and timely[2] brought. *See O'Sullivan*, 526 U.S. at 847-48 (holding that fair presentation includes a request for discretionary review in the state's highest appellate court).

## I. The Prosecution Has Proven Petitioner's Guilt Beyond a Reasonable Doubt

This court owes deference to the state trial court's determination that the prosecution has proven petitioner's guilt beyond a reasonable doubt, and finds no error or misapplication of established Supreme Court precedent in the Appellate Division's opinion. The Fourteenth Amendment guarantee of due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see also Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (holding that no conviction shall be made except

---

[2] AEDPA requires a state prisoner whose conviction has become final to file a petition for a writ of habeas corpus within one year. 28 U.S.C. § 2244(d)(1)(A). The one-year period runs from the date "on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Here, subsection A applies to petitioner's writ of habeas corpus. Petitioner's state conviction became final on February 13, 2018. *People v. Aponte*, 30 N.Y.3d 1113 (2018). Petitioner timely filed his habeas petition on January 28, 2019, within AEDPA's one-year statute of limitations.

upon "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."). A petitioner bringing a challenge to the state court criminal conviction in federal court, pursuant to 28 U.S.C § 2254, is entitled to habeas corpus relief if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324. The court may find that the prosecution has satisfied its burden of proof if, after viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

Petitioner brings the same claims that he raised on direct appeal: that the prosecution failed to prove his guilt in association with the armed robbery beyond reasonable doubt; and that the verdict was against the weight of the evidence. (Pet. at 7.) The record, however, is to the contrary. There was video surveillance footage of petitioner committing the crime, DNA evidence tying petitioner to the getaway vehicle, and the victim's identification of petitioner in a line-up and in-court. As a result, there was sufficient evidence adduced at trial to conclude that petitioner committed robbery on the date of November 3, 2010.

13

First, video from the surveillance cameras within the store where the robbery took place show the encounter between petitioner and Mr. Esa, the store owner and the victim, and captures the petitioner's face at several points during the robbery.[3] (Tr. at 483:23—484:15.) As described by the trial court, "[a] surveillance videotape from [Mr. Esa's] store, which recorded the entire incident inside the store, was admitted into evidence. The surveillance system depicted the incident, in color, from four different camera angles, including a close-up angle of the complainant and the defendant." *Aponte*, 149 A.D.3d at 1097, 53 N.Y.S.3d 652. The trial court's review and the jury's finding both clearly state that petitioner is the individual depicted on the videotape.

Second, two witnesses identified petitioner entering a getaway vehicle. (Tr. at 116-17, 134, 192-96, 214-217.) Petitioner's DNA was found on the three surfaces most likely to be touched by the driver: the steering wheel, the gear shift handle, and the rear-view mirror. (Tr. 201-04, 287-88, 294-97, 329, 344-48.) Petitioner argued before the Appellate Division,

---

[3] This court relies on the description of the videotape from state trial transcripts and does not review the underlying evidence. *See* 28 U.S.C. § 2254(e)(1) (determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Miller v. Fenton*, 474 U.S. 104, 117 (state court's determinations of factual matters are considered questions of fact, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(d)).

14

without providing an alternative explanation, that the prosecution has simply established that the petitioner was in the vehicle at some indeterminate time before or after the robber used it to commit the robbery. (Appellant's Brief ("App. Br.") at 23, ECF No. 11-5.)

In addition to the video recording and DNA evidence, the victim, Mr. Esa, identified petitioner both in court and in a lineup as the person who committed the robbery, and as the person who entered the vehicle. (Tr. 107-08, 141-42, 183, 379.) Petitioner contends that Mr. Esa's conflicting initial characterization of petitioner as African American, instead of petitioner's self-identification as Hispanic, demonstrates that the elements of the offense were not proven beyond a reasonable doubt. (Pet. at 7.) Although petitioner does not allege that unduly suggestive practices were used during the photo array or lineup, such a claim would still fail, because even if a procedure were suggestive, the "'totality of the circumstances' might indicate that the identification is reliable" including "the opportunity of the witness to view the criminal at the time of the crime." *Parham v. Griffin*, 86 F. Supp. 3d 161, 170 (E.D.N.Y. 2015)(quoting *Neil v. Biggers,* 409 U.S. 188, 199-200 (1972)). Here, the witness identified petitioner during the hearing as the robber. Further, the identification of petitioner as the person entering the getaway vehicle by

15

multiple witnesses, coupled with the DNA match, indicate that the totality of the circumstances test is satisfied here.

In sum, the evidence in this case overwhelmingly points to petitioner as the correctly identified robber. The surveillance video recording, DNA evidence and eyewitness testimony rebut petitioner's claim that the evidence was legally insufficient. "Determinations of fact by state courts are presumed correct unless shown otherwise by the petitioner using 'clear and convincing evidence.'" *Parham v. Griffin*, 86 F. Supp. 3d 161, 170 (E.D.N.Y. 2015)(quoting 28 U.S.C. § 2254(e)(1)). Here, petitioner has presented no clear and convincing evidence to undermine the determinations of fact. The evidence presented at trial could have led a rational trier of fact to find the petitioner guilty of robbery in the first degree and criminal possession of a weapon in the fourth degree, and the Appellate Division's ruling was not contrary to, or an unreasonable application of, the clearly established law articulated by the Supreme Court. *See Jackson,* 443 U.S. at 319. Petitioner's first claim is DENIED. The court next analyzes petitioner's Sixth Amendment claim.

II.  **Sixth Amendment Claim**

Mr. Aponte contends that his Sixth Amendment right of confrontation was violated when the prosecution introduced testimonial DNA evidence through Ms. Joanna Schlesser-Perry, a

16

Level 4 Criminalist with the OCME, an expert witness who "did not conduct the final testing" or "personally perform any part of the DNA testing or comparison or observe any one of the multitude of criminalists who did, or review the appropriate preliminary results of the testing process." Pet. at 11; see *Crawford v. Washington*, 541 U.S. 36, 53-54(2004) "([A]dmission of testimonial statements of a witness who did not appear at trial [is prohibited] unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."). The Appellate Division rejected Mr. Aponte's Sixth Amendment claim on the merits because Ms. Schlesser-Perry's "testimony established that she conducted an independent analysis of the raw data that led her to conclude that the DNA on the steering wheel matched the defendant's DNA." *Aponte*, 149 A.D.3d at 1098, 53 N.Y.S.3d 652.  The Appellate Division's ruling was not contrary to existing Supreme Court law.

The Supreme Court in *Bullcoming v. New Mexico*, 564 U.S. 647, 652, 657, 661-62, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011) held that, while "surrogate testimony" of an expert who did not participate in testing or analysis violates the Confrontation Clause, the question of "the degree of involvement" necessary from "no involvement whatsoever," as was the case in *Bullcoming*, to a hypothetical "supervisor, reviewer,

17

or someone else with a personal, albeit limited, connection to the scientific test at issue" who had formulated an "independent opinion" was left open by the court. *Bullcoming*, 564 U.S. at 672-73, 131 S.Ct. 2705 (Sotomayor, J., concurring); *cf. Gauldin v. Cate*, 672 F. App'x 774, 775 (9th Cir. 2017) (denying habeas relief on the ground that the opportunity to cross-examine a supervising criminalist, whose testimony was informed by the analyst's report, satisfied the Confrontation Clause). Courts in this district have held that a defendant's right to confront is satisfied where a supervising criminalist forms an independent opinion and was subject to cross examination. *Beckham v. Miller*, 366 F. Supp. 3d 379, 385 (E.D.N.Y. Feb. 7, 2019); *Sanchez v. Rock,* No. 12-CV-1605 JS, 2014 WL 3866456, at *10 (E.D.N.Y. Aug. 6, 2014).

Here, OCME analysts tested the swabs taken from the getaway vehicle and produced a DNA profile report, not for the purpose of introducing the DNA as evidence against a known defendant, but for the sole investigative purpose of determining the identity of the robber. *See Williams*, 567 U.S. at 68 (lab report containing DNA evidence was non-accusatory and was for the purpose of finding a rapist on the loose). The swabs taken from inside the getaway vehicle were tested in November 2010, before Mr. Aponte was identified as a suspect. (Tr. at 261.) A DNA swab was taken from petitioner on May 26, 2011. (Tr. at

18

404-5.) Both swabs were not accusatory, as the DNA swabs taken from the getaway vehicle and the buccal swab taken from the petitioner were matched only by the independent opinion formed by the supervising criminalist, Ms. Schlesser-Perry, who petitioner had an opportunity to cross-examine. Her analysis constituted "the only accusatory step of the entire testing process and the step most helpful to criminal prosecution," and by having the opportunity to cross-examine her, "[petitioner's] right to confrontation was satisfied." *Beckham*, 366 F. Supp. 3d at 385; *see Bullcoming*, 564 U.S. at 658-59 (holding that "[a]n analyst's certification prepared in connection with a criminal investigation or prosecution . . . is 'testimonial,' and therefore within the compass of the Confrontation Clause") (quoting *Melendez-Diaz*, 557 U.S. at 321-24).

For the foregoing reasons, this Court cannot conclude that petitioner "has sustained his burden of showing that the Appellate Division applied a rule contradict[ing] the governing law set forth in [the Supreme Court's cases]" or that its decision was "so lacking in justification" as to constitute an unreasonable application of clearly established federal law "beyond any possibility for fairminded disagreement." *Griffin*, 876 F.3d at 410 (internal quotation marks omitted). Therefore, petitioner's Sixth Amendment claim is also DENIED.

**CONCLUSION**

For the foregoing reasons, Mr. Aponte's § 2254 petition is DENIED. Because Mr. Aponte has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rule 11, 2254 Rules ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The Clerk of Court is respectfully directed to enter judgment, serve a copy of this Memorandum and Order and the judgment on the *pro se* petitioner, note service on the docket, and close the case.

**SO ORDERED.**

Dated:    August 6, 2020
          Brooklyn, New York

                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York